```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION
```

| | |
|---|---|
| LISA CHISENHALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 4:07-CV-587 (CEJ) |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security, ) | |
| Defendant. ) | |

### MEMORANDUM AND ORDER

This matter is before the Court for review of an adverse ruling by the Social Security Administration.

### I. Procedural History

On April 21, 1999, plaintiff Lisa Chisenhall filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., with an alleged onset date of August 1, 1998. (Doc. #22-3, at 2). On May 12, 1999, plaintiff's application was approved. (Tr. 11).

On September 7, 2004, the Social Security Administration (SSA) notified plaintiff that she had been overpaid in disability insurance benefits. (Tr. 15). On October 19, 2004, plaintiff submitted a request for waiver of overpayment recovery. (Tr. 18-25). After plaintiff's request was denied (Tr. 26), she submitted a request for reconsideration. (Tr. 30).

A hearing before an Administrative Law Judge (ALJ) was held on March 15, 2006. (Tr. 76). Plaintiff attended the hearing and was represented by counsel. (Tr. 78). The ALJ issued a decision on

August 23, 2006, denying plaintiff's request for a waiver of overpayment. (Tr. 8-14). The Appeals Council denied plaintiff's request for review on January 20, 2007. (Tr. 3-7). Accordingly, the ALJ's decision stands as the Commissioner's final decision. See 42 § U.S.C. 405(g).

## II. **Evidence Before the ALJ**

Plaintiff was the sole witness at the hearing before the ALJ. (Tr. 76). At the time, she was 44 years old. (Tr. 78-79).

Plaintiff testified that she began receiving Social Security benefits in the 1980s, which continued "off and on" over the years. Plaintiff testified that she did not receive the benefits when she worked. Plaintiff stated that she initially received Supplemental Security Insurance (SSI) benefits, but she later received disability insurance benefits. (Tr. 79). Plaintiff testified that when her SSI benefits changed to disability insurance benefits, she had no discussions with the SSA regarding the difference in the work reporting rules for the two types of benefits. (Tr. 80).

Plaintiff testified that she occasionally received pamphlets from the SSA. Because she had not requested this information, plaintiff believed the pamphlets were "junk mail [that she] didn't think . . . meant anything." Plaintiff explained that she did not "sit down and read the junk mail." (Tr. 79).

Plaintiff testified that she suffered from a visual disability which required her "to read everything with a magnifier." Plaintiff testified that her visual disability caused her not to read unexpected mail. Plaintiff testified that it took her about

fifteen minutes to read a four-page letter. (Tr. 80). Plaintiff testified that she was surprised to receive the notice of overpayment "because they knew [she] had a job, and they [kept] sending [her] money, and [she] figured they knew what they were doing, and [she] took it." (Tr. 81). Plaintiff testified that she informed the SSA that, in August 1999, she started working for Retina Consultants, LTD. (Tr. 83). Plaintiff testified that her work hours remained the same throughout her employment and that her earnings increased by only a few cents. (Tr. 81). Plaintiff testified that she did not report the pay increases to SSA and that she was unaware of her duty to report them. Plaintiff denied receiving benefits that she was not entitled to receive. (Tr. 82).

Plaintiff's attorney informed the ALJ that a claims representative had completed a report, titled "Disability Report - Field Office," at the time of plaintiff's application for disability insurance benefits. (Tr. 84). As to plaintiff's difficulty with reading, plaintiff's attorney noted that the claims representative reported that she did not observe whether plaintiff had difficulty with reading. The claims representative also noted that plaintiff did not read the forms before signing them. (Tr. 84); (Doc. #22-4). Plaintiff's attorney argued that plaintiff "didn't read the forms and Social Security saw that and didn't do anything about it . . . ." Plaintiff's attorney further explained that "when Social Security observed [plaintiff] wasn't reading the forms, they should have taken the time to explain to her all of the ramifications of what she was signing and all she had to do."

Plaintiff's attorney further asserted that plaintiff was without fault because of her difficulty with reading, the SSA's misleading letters, and plaintiff's inability to repay the overpayment. (Tr. 85).

### III. <u>Documentary Evidence</u>

On August 2, 2000, plaintiff completed a "Report of Work Activity - Continuing Disability" form. (Doc. # 22-5). On this form, plaintiff reported that she worked as a medical records clerk for Retina Consultants from August 23, 1999 through the date of the form. Plaintiff also reported that she worked for Kelly Services from May 1999 through August 1999 and Brennan Staffing from December 1998 through March 1999. (Doc. #22-5).

On August 3, 2000, the SSA issued plaintiff a Notice of Change in Benefits, stating: "We checked our records to see if any changes in your benefits are necessary. We are increasing your benefit amount to give you credit for your earnings in 1999 which were not included when we figured your benefit before." (Tr. 59). On June 21, 2001, the SSA issued plaintiff a Notice of Proposed Decision, informing her that "[her] disability ended because of substantial work and that [she was] not entitled to payments for: June 2000 through February 2001." (Tr. 14A). This notice informed plaintiff of her trial work period from May 1999 through February 2000, an additional two months of automatic benefit payments, and a 36-month extended period of eligibility. (Tr. 14B). The notice further

indicated that, for blind individuals,[1] work is substantial if the gross monthly earnings averaged more than (1) $1240, beginning January 2001, and (2) $1170 from January 2000 through December 2000. (Tr. 14C).

On November 1, 2001, the SSA issued plaintiff a Notice of Change in Benefits, stating: "We checked our records to see if any changes in your benefits are necessary. We are increasing your benefit amount to give you credit for your earnings in 2000 which were not included when we figured your benefit before." (Tr. 57). On October 31, 2002, and November 6, 2003, the SSA issued plaintiff similar documents, informing plaintiff that her benefit payments would increase based on her earnings in 2001 and 2002. (Tr. 54, 56).

On September 7, 2004, the SSA issued plaintiff a Notice of Change of Benefits, informing plaintiff that she had received an overpayment in the amount of $17,879.21. (Tr. 15). The document indicated that plaintiff's "benefits [would] be terminated effective March, 2003. Any benefits that [she] received from March, 2003, through August, 2004, [would] be posted as an overpayment." (Tr. 15). On October 19, 2004, plaintiff filed a Request for Waiver of Overpayment Recovery or Change in Repayment Rate form, alleging that she was not at fault in connection with the overpayment. (Tr. 18). As to fault, plaintiff explained that

---

[1] Plaintiff was diagnosed with "blindness and low vision" with an onset date of August 1, 1998. (Doc. #22-3, at 2).

she "didn't think that [she] was being overpaid. [She] just took what money was sent to [her]." (Tr. 19).

The record reflects that plaintiff was overpaid from March 2000 through February 2001. The overpayment resulted from plaintiff engaging in "substantial gainful activity without reporting the work activity." Money was being withheld from plaintiff's paycheck, and by the time of the ALJ's decision the balance of the overpayment for that period was is $1,472.21. (Tr. 12, 39). The remaining $16,407.00 overpayment claimed by the SSA also resulted from plaintiff "working at the level of substantial gainful activity without reporting the work activity" during the period March 2003 through August 2004. (Tr. 12, 39-40).

In a decision issued on March 7, 2005, the SSA denied plaintiff's request for waiver of the overpayment, but offered her a personal conference to discuss the denial. Plaintiff declined the personal conference. (Tr. 26). In a letter dated March 23, 2005, the SSA reiterated its denial of plaintiff's request for waiver, but informed plaintiff of her right to request reconsideration. (Tr. 27). On March 31, 2005, plaintiff submitted a reconsideration request form, indicating that the overpayment was not her fault and she could not repay the money. (Tr. 30-31). In a Report of Contact dated April 13, 2005, an SSA representative wrote that plaintiff "sent in another waiver request and a request for reconsideration. I am assuming she is wanting to appeal the denial to the ALJ and she just printed up whatever forms she came accross on the internet." (Tr. 39).

## III. The ALJ's Decision

Administrative Law Judge James E. Seiler presided at plaintiff's administrative hearing, and made the following findings:

1. The claimant was not eligible for payments she received, in the amount of $17,879.21.

2. The claimant was overpaid benefits in the amount of $17,879.21.

3. The undersigned has reviewed the file and carefully considered the claimant's testimony. The testimony is not credible.

4. The claimant knew, or reasonably should have known that she was not entitled to payments she received while engaging in substantial gainful activity. She then failed to return payments she knew or reasonably should have known were incorrect.

5. The claimant was not without fault in accepting the overpayment. Recovery of the overpayment cannot be waived.

(Tr. 13-14).

## IV. Discussion

An overpayment occurs when "an individual receives more . . . than the correct payment due under title II of the Act." 20 C.F.R. § 404.501. The Social Security Act generally requires the Commissioner to recover an overpayment. 42 U.S.C. § 404(a)(1)(A). However, the statute explains that "there shall be no . . . recovery . . . from, any person who is without fault if such . . . recovery would defeat the purpose of this [Act] or would be against equity and good conscience." 42 U.S.C. § 404(b). The overpaid claimant has the burden of proving entitlement to a waiver of overpayment. <u>Coulston v. Apfel</u>, 224 F.3d 897, 900 (8th Cir. 2000)

(per curiam) (citations omitted). Fault by the SSA does not relieve the overpaid claimant from proving that he or she is without fault. 20 C.F.R. § 404.507.

To determine whether a claimant is at fault, "the SSA will consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations . . . the individual has." 20 C.F.R. § 404.507. The claimant is at fault when:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have expected to know was incorrect.

Id.

To "[d]efeat the purposes of title II . . . means [to] defeat the purpose of the benefits under this title, i.e., to deprive a person of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508.[2] An overpaid claimant's ordinary and necessary living expenses include:

> (1) Fixed living expenses, such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance (e.g., life, accident, and health insurance including premiums for supplementary medical insurance benefits under title XVIII), taxes, installment payments, etc.;

---

[2] The ALJ found that "[b]ecause [plaintiff was] not without fault in causing and accepting the overpayment, there [was] no issue as to whether the recovery would defeat the purpose of Title II of the Social Security Act or be against equity and good conscience." (Tr. 13).

-8-

>    (2) Medical, hospitalization, and other similar expenses;
>
>    (3) Expenses for the support of others for whom the individual is legally responsible; and
>
>    (4) Other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living.

Id.

### A. Standard of Review

The Court must affirm the Commissioner's decision, if the decision "is supported by substantial evidence on the record as a whole." Gladden v. Callahan, 139 F.3d 1219, 1222 (8th Cir. 1998), quoting Smith v. Schweiker, 728 F.2d 1158, 1161 (8th Cir. 1984). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002), quoting Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001). To determine whether the Commissioner's decision is supported by substantial evidence, the Court "must take into account whatever in the record detracts from its weight." Gladden, 139 F.3d at 1222, quoting Smith v. Schweiker, 728 F.2d at 1162. The Court may not reverse merely because the evidence could support a contrary outcome. Estes, 275 F.3d at 724.

### B. Plaintiff's Allegations of Error

Plaintiff does not dispute the fact that she received an overpayment of disability insurance benefits. Rather, plaintiff asserts that the ALJ erred in his finding that she was at fault in causing the overpayment. Plaintiff contends that the ALJ's

decision is not supported by substantial evidence on the record as a whole.

Plaintiff first argues that she timely reported her work activity, and the communications from the SSA misled her for at least part of the overpayment period. On August 2, 2000, nearly fifteen months after she resumed working, plaintiff reported her work activity to the SSA. (Doc. #22-5). The next day the SSA issued plaintiff a notice, informing her that her benefit payments would increase based on her earnings in 1999. (Tr. 59). In a notice dated June 21, 2001, the SSA informed plaintiff that the SSA was considering terminating her disability benefits. (Tr. 14A). On November 1, 2001, October 31, 2002, and November 6, 2003, the SSA issued plaintiff notices, informing her that her benefit payments would increase. (Tr. 54, 56-57).

Plaintiff argues that because the overpayment at issue is a "deduction overpayment," the provisions of 20 C.F.R. § 404.510 apply. A deduction overpayment is a "a payment resulting from the failure to impose deductions or to suspend or reduce payments . . . ." 20 C.F.R. § 404.501(a). To determine fault in connection with a deduction overpayment, 20 C.F.R. § 404.510 states that the SSA will consider the "pertinent circumstances" listed in 20 C.F.R. § 404.507. However, 20 C.F.R. § 404.510 provides that the claimant is considered without fault if either of the following circumstances is present:

> (b) Reliance upon erroneous information from an official source within the [SSA] . . . with respect to the interpretation of a pertinent provision of the

>     Social Security Act or regulations pertaining thereto. . . .
>
> (g) The continued issuance of benefit checks to him after he sent notice to the Administration of the event which caused or should have caused the deductions provided that such continued issuance of checks led him to believe in good faith that he was entitled to checks subsequently received. . . .
>
> (n) Failure to understand the deduction provisions of the Act or the occurrence of unusual or unavoidable circumstances the nature of which clearly shows that the individual was unaware of a violation of such deduction provisions.

Id.

In his decision, the ALJ cited only 20 C.F.R. § 404.507; there is no mention of 20 C.F.R. § 404.510. Nevertheless, it is evident from the decision that the ALJ considered the evidence in the context of one of the circumstances described in § 404.510.

Specifically, with respect to § 404.510(b), the ALJ implicitly found that the plaintiff had not relied on erroneous information from the SSA with respect to the interpretation of any provision of the Act or any regulation. Indeed, plaintiff concedes that the circumstance described in § 404.510(b) is inapplicable to her situation because she did not read the correspondence from the SSA and therefore could not have relied on the information it contained. However, there is no indication that the ALJ considered whether the continued issuance of benefits checks after plaintiff notified the SSA of her substantial gainful activity led plaintiff to believe in good faith that she was entitled to the checks (see § 404.510(g)). There is also no indication whether the ALJ considered whether plaintiff failed to understand the deduction

-11-

provisions of the Act or whether there was an unusual or unavoidable circumstance clearly showing that plaintiff was unaware of the violation of the deduction provisions (see § 404.510(g)(n)). In the brief in support of his answer, the defendant does not address the issue of whether the overpayment here was a deduction overpayment or whether the ALJ should have considered the issue of fault under the provisions of 20 C.F.R. § 404.510.

In her second argument, plaintiff contends that, as a visually-impaired individual, she was not at fault for failing to read and learn the work requirements for DIB benefits. Plaintiff asserts that the ALJ's finding that she suffered from "some visual limitations" underestimated her visual disability. The record establishes that plaintiff's visual impairment does not preclude her from reading and understanding information. In fact, plaintiff testified that she could read with the aid of a magnifier. (Tr. 80). As defendant correctly notes, it is obvious that plaintiff read some of the correspondence sent to her by the SSA because "she requested waiver of her overpayment after receiving her overpayment notice, and called and declined [her] personal conference after receiving notice of her right to meet." The record supports the ALJ's finding that plaintiff suffered from only "some visual limitations."

Plaintiff next challenges the ALJ's statement that she chose not to read the notices from the SSA. (Doc. #22-2, at 12). She argues that her ability to engage in substantial gainful activity

-12-

is not inconsistent with the limitations on her reading ability. The record shows that plaintiff testified that she could read, although she was required to use a magnifier. (Tr. 80). Further, plaintiff testified that she disregarded correspondence from the SSA, not because she couldn't read it, but because she thought it was junk mail. Thus, the ALJ's statement is supported by the record.

Plaintiff argues that her blindness affected her ability to comply with the requirements for receiving disability insurance benefits. The ALJ found that there were "no pertinent factors such as [plaintiff's] age, intelligence, or any physical, mental, educational, or linguistic limitations that have interfered with the claimant's ability to handle her own affairs, or that have resulted in the claimant's misunderstanding of payments due to her." (Tr. 13). Plaintiff contends that "the ALJ should [have] consider[ed] the effect of [plaintiff's] physical limitations on the issues relating to fault." (Doc. #22-2, at 14). Plaintiff, however, points to no evidence establishing that she lacked the ability to comply with the SSA requirements. As discussed above, plaintiff's vision impairment did not prevent her from reading mail or from completing the forms and following the procedures for seeking a waiver of overpayment. Therefore, the record does not support plaintiff's assertion that her disability affected her ability to comply with the disability insurance requirements.

Next, plaintiff argues that she misunderstood the payments to which she was entitled. The ALJ found that plaintiff suffered from

-13-

no limitations that would "have resulted in [plaintiff's] misunderstanding payments due to her." (Tr. 13). Plaintiff does not contend that her vision impairment caused her misunderstanding. Rather, she contends that the misunderstanding was caused by the SSA's failure to point inform her of the difference between the return to work restrictions for SSI and those for disability insurance benefits. The record contains no evidence that the SSA informed plaintiff of the work provisions applicable to recipients of disability insurance benefits. Additionally, the ALJ failed to consider whether the this omission caused plaintiff to misunderstand the payments due to her. Therefore, the record does not support the ALJ's finding that there are no "pertinent factors" that resulted in plaintiff's misunderstanding of the payments due to her.

Plaintiff claims that, even if she had read the notices from the SSA, she could not have determined from them that the SSA overpaid her. Plaintiff's assertion is without merit because there is substantial evidence to the contrary. The record contains a June 21, 2001 notice that the SSA issued plaintiff. (Tr. 14A). The notice informed plaintiff that (1) the SSA was considering terminating her disability benefits; (2)she was not entitled to benefits from June 2000 through February 2001; (3) a gross monthly income of $1,240 would qualify as substantial work; and (4) her trial work period ended in February 2000. (Tr. 14A-14C). The record indicates that plaintiff's monthly earnings exceeded

-14-

$1,240.[3] (Tr. 71). Therefore, plaintiff had sufficient information from which she could have determined that the SSA overpaid her after June 21, 2001. See Brenner v. Astrue, No. 4:07 CV 1632 DDN, 2008 WL 3925166 (E.D. Mo. Aug. 20, 2008) (reversing ALJ's denial of waiver request for period after overpaid claimant received Notice of Proposed Decision, informing claimant of possible termination of disability benefits, substantial gainful activity qualifications, and termination of trial work period).

However, the record contains no evidence that the SSA, prior to the June 21, 2001 notice, informed plaintiff that her earnings qualified as substantial gainful activity. "For the period before [plaintiff's] receipt of this document, the ALJ's finding that [she] knew or should have known that . . . her monthly earnings qualified as substantial evidence is founded upon speculation about what [she] knew. Such speculation is not substantial evidence." Brenner v. Astrue, No. 4:07 CV 1632 DDN, 2008 WL 3925166, at *7. Therefore, with respect to the overpayments that occurred before June 21, 2001, the record supports plaintiff's argument that "she could not have determined that she was being erroneously paid" and does not support the ALJ's finding that plaintiff could have known that she was not entitled to those payments. (Doc. #22-2, at 16).

### V. Conclusion

---

[3] The record indicates that plaintiff earned (1) $18,815.48 in 2001, which equaled $1567.96 per month; (2) $19,400.90 in 2002, which equaled $1,616.74 per month; and (3) $18,801.97 in 2003, which equaled $1566.83 per month. (Tr. 13, 71).

-15-

As discussed above, the Court finds that most of the plaintiff's arguments lack merit and that most of the ALJ's findings are supported by the record.  However, because the ALJ failed to consider the circumstances set forth in 20 C.F.R. § 404.510, his conclusion that the plaintiff was not without fault in accepting the overpayment is not supported by substantial evidence.  Therefore, the Commissioner's decision will be reversed and the case remanded under sentence 4 of 42 U.S.C. § 405(g).  Upon remand, the Commissioner should determine whether 20 C.F.R. § 404.510 applies and, if so, evaluate whether plaintiff is at fault under this regulation.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **reversed** and this case is **remanded** pursuant to sentence 4 of 42 U.S.C. § 405(g) for a hearing to determine whether 20 C.F.R. § 404.510 applies, and, if so, to develop the record accordingly.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 25th day of September, 2008.